Tom Buchele, (CA Bar No. 129657)
Bridgett Buss, *Admitted Pro Hac Vice*
Earthrise Law Center
Lewis & Clark Law School
10101 S Terwilliger Blvd.
Portland OR 97219-7799
Tel:  503-768-6736 (Buchele)
Tel:  503-768-6825 (Buss)
Fax: 503-768-6642
Email: tbuchele@lclark.edu
Email: bridgettbuss@lclark.edu

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EARTH ISLAND INSTITUTE**, a non-profit corporation; **CENTER FOR BIOLOGICAL DIVERSITY**, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE,** an agency of the United States Department of Agriculture; **MARGIE B. DEROSE**, Acting District Ranger, Mono Lake and Mammoth Ranger District, Inyo National Forest, in her official capacity,<br><br>Defendants. | No. 2:19-cv-1271-MCE-DB<br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 74)** |

1

**INTRODUCTION**

2

In addition to the ten fully-briefed claims brought in their original complaint challenging

3

the Three Creeks Project, *see* ECF Nos. 1, 31, 45, 52, 53, in August of 2021 Plaintiffs Earth

4

Island Institute and Center for Biological Diversity (collectively "Earth Island") submitted an

5

amended summary judgment motion and supporting Supplemental Memorandum, ECF Nos. 74

6

and 75, that sought judgment under the National Environmental Policy Act ("NEPA") and the

7

Administrative Procedure Act ("APA") on two new claims, Claims 11 and 12, in their First

8

Amended and Supplemental Complaint. ECF No. 69. Both those claims allege violations of the

9

Defendants', United States Forest Service and Margie DeRose (collectively "Forest Service" or

10

"Service"), obligations under 40 C.F.R. § 1502.9(c)(1) (2018) to prepare supplemental NEPA

11

analysis when there are significant new circumstances or information. Claim 12 focuses on the

12

Service's decision in an October 2020 supplemental information report ("SIR"), AR 16475–84,

13

that the Three Creeks Project did not require any supplemental NEPA analysis even though the

14

Forest Service acknowledged that changed circumstances (a bark beetle outbreak, the "beetle

15

kill"), had eliminated the ability of the Project to provide 90% of its intended enhanced habitat for

16

the Pacific marten, a "sensitive species" (the "marten units").[1] Claim 11 seeks relief because the

17

Forest Service also has failed to act on its continuing obligation under NEPA Section

18

1502.9(c)(1) to affirmatively address even newer information, in this case a new Forest Service

19

proposal, the Inyo Craters Project, to remove more large trees from areas within and around the

20

Three Creeks Project area, thereby further degrading these areas as habitat for the Pacific marten.

21

In its Response the Forest Service first argues that Earth Island's challenge to its SIR

22

(Count 12) fails because "[p]laintiffs overstate the importance of the marten units to the overall

23

analysis of impacts on the Pacific marten[,]" ECF No. 80 at 9, and challenges Earth Island's use

24

of the term "enhancement" to describe the intended impact of those now missing marten units on

25

marten habitat within the project area. *Id.* at 8. But the Forest Service itself repeatedly uses that

26

term when describing the original intent and impact of the marten units. See below, at 3. More

27

28

---

[1] The EA identifies units 0370014 [subunit 002], 0390009, and 0390004 as the marten units. *See* AR 00020; AR 00042; *see also* ECF No. 52 at 31–33 (discussing importance of marten units).

PAGE 1 OF 10. REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
SUMMARY JUDGMENT

1   importantly, the Service's Finding of No Significant Impact ("FONSI") expressly relied on

2   "design features," including the marten units, to "minimize…impacts to sensitive plant and

3   animal species" when explaining its "no significant impacts" conclusion. AR 00115–6. The

4   elimination of 90% of the area that was intended to be modified according to these project

5   "design features" to help minimize impacts on a sensitive species like the Pacific marten is

6   exactly the sort of "new circumstances" that trigger the need for supplemental NEPA analysis

7   under Section 1502.9(c)(1). In addition, the analysis the SIR *does* do regarding impacts to marten

8   habitat is also arbitrary and capricious in violation of NEPA because it only cites to outdated

9   science and ignores much more recent and relevant science regarding the adverse impacts of

10  logging like that authorized by the Three Creeks Project on marten habitat.

11          With regard to Earth Island's claim that the Service had failed to supplement its NEPA

12  analysis in light of its new Inyo Craters Project (Claim 11), the Forest Service's primary

13  "defense" is that the Inyo Crater's Project is just a "proposal" and Earth Island did not sufficiently

14  notify it that it had an obligation under Section 1502.9(c)(1) to supplement its NEPA analysis for

15  the Three Creeks Project and that this mere "proposal" does not constitute "new information."

16  ECF No. 80 at 11–13. Section 1502.9(c)(1), however, imposes independent obligations on the

17  Service to consider all the impacts of reasonably foreseeable future actions, regardless of whether

18  they have actually been approved. The Forest Service's own October 2020 SIR was expressly

19  limited to the new information that existed then – the beetle kill – and acknowledged that it might

20  propose "treatment under a new project" and that such a proposal could trigger additional NEPA

21  obligations. AR 16484. The Inyo Craters Project is precisely such a proposal. The Forest Service

22  must consider the combined impacts of that proposal and the Three Creeks Project now before the

23  Three Creeks Project has logged all of the large trees it has targeted, and it has not done so.

24  **ARGUMENT**

25  I.      **The SIR's decision that new circumstances which eliminated 90% of the marten
        habitat enhancement in the marten units did not require additional NEPA
        analysis was arbitrary and capricious because the Forest Service's initial FONSI
26      expressly relied on those units' benefits to the marten.**

27          In its Response, the Forest Service essentially takes the position that new information

28  regarding the now-degraded quality of the marten habitat in 90% of the marten units will not

PAGE 2 OF 10. REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
SUMMARY JUDGMENT

1    result in significant or uncertain impacts to marten because the marten units were not very

2    important in the first place. ECF No. 80 at 6–11. Specifically, the Forest Service argues that Earth

3    Island's characterization of work in the marten units as "enhancements" is not accurate, *id.* at 8;

4    but Earth Island is unsure how else to characterize this work because that language was adopted

5    from the EA itself:

6
     A reduction in habitat quality as a result of project implementation is expected to have
7    little direct or indirect impact on martens as they generally do not use much of the area
     within the proposed treatment units. The exception to this are treatment units 0370014,
8    0390004 and 0390009 where marten use has been well documented and habitat quality is
     generally high. . . *Treatments proposed in these three stands would be minimally invasive*
9    *and were designed to enhance and protect marten habitat.*

10   AR 00040–41 (emphasis added); *see* also AR 00038 ("[marten units] would be treated only to the

11   extent that [treatment] would protect or enhance habitat for Pacific martens"); AR 00041 ("[a]ny

12   martens present during project implementation may be temporarily disturbed by … habitat

13   enhancement operations").

14         The Forest Service also argues that the previously planned work in the marten units is not

15   intended to be mitigation, ECF No. 80 at 8, but such mitigation was baked into the Project's very

16   design. The EA states that "[p]roposed activities were designed to prevent and/or mitigate

17   potential adverse effects (see Design Criteria)." AR 00099. While no "Design Criteria" section is

18   included in the EA, this term appears to be used interchangeably with "Design Features," which

19   are listed in the EA at AR 00015–26. These Design Features include features to "protect

20   important wildlife habitat" including "special design treatment measures… applied within [the

21   marten units]," AR 00016, as well as a list of design features to "be applied within marten habitat

22   [citing to the three marten units]" AR 00020–21. Considering the purpose of the design features,

23   it is clear the work proposed to enhance the marten units was intended as mitigation. The FONSI

24   itself relies on these design features to "minimize…impacts to sensitive… animal species" like

25   the marten. AR 00116 (citing to design feature pages of EA). The elimination of measures that

26   mitigate or minimize impacts to wildlife usually requires supplemental NEPA analysis. *See* ECF

27   No. 75 at 17, citing *LOWD/BMBP v. Connaughton,* 752 F.3d 755, 760 (9th Cir. 2014).

28         The Forest Service has attempted to frame the issue, and support the SIR's analysis of "no

impacts," as a matter of the remaining Project treatment "not harm[ing] Pacific marten in any significant way." ECF No. 80 at 1; *but see* discussion below, at 5, addressing SIR's reliance on outdated science. While *harm* to marten is certainly a variable in the calculation of impacts, the Service is omitting the equally relevant, and entirely separate, variable of *benefit* to marten. *See* 40 C.F.R. § 1508.27(b)(1) (2018) (evaluation of the significance of impacts includes both beneficial and adverse impacts). Specifically, compared to the modified project, which includes habitat enhancement treatments on only 10% of the previously required area, the marten might have benefitted from either (1) leaving the stands in their *previous* natural state under the No Action alternative,[2] or (2) the previously proposed enhancement treatments covering 100% of the required area. What the SIR failed to analyze, and what must now be addressed in a supplemental EA ("SEA"), is the impact of a project where *neither* of those benefits are realized.

The Service does argue that it "considered both beneficial and adverse effects of the Project in its analysis," ECF No. 80 at 9, but also cites to a portion of the EA that indicates that "determinations for the [FONSI] were made on the basis of *only* adverse effects." AR 00033 (emphasis added). Again, this omits half of the equation, and violates NEPA's mandate to "consider[]… [i]mpacts that may be both beneficial and adverse" when evaluating significance. 40 C.F.R. § 1508.27(b)(1) (2018). The Forest Service is not oblivious to the need to discuss beneficial impacts, although perhaps selective in its application, as demonstrated by the SIR's statement that Project "treatments are expected to provide the same benefits and have the same environmental impacts with respect to *the remaining 9,031 acres*[.]" AR 16481.  Perhaps more importantly, despite the FONSI's general assertion that it did not consider the project's benefits when addressing the significance of its impacts, *see* AR 00116, just a few sentences later the Forest Service in fact expressly relied on the fact that "design features" (located at AR 00015–00026), would "minimize…impacts to sensitive plant and animal species," AR 00116, when determining the Project's supposed lack of significant impacts. The Pacific marten is one of only two sensitive species impacted by the Project and the cited "design features" include the habitat

---

[2] The Moriarty Study, AR 05563, discussed below at 5, indicated that not conducting fuel treatments in marten habitat would be beneficial to them.

1    enhancement in the marten units. AR 00038; AR 00020–21. *See also* ECF No. 75 at 17. This is

2    necessary context when considering the Service's decision to refuse to consider these and other

3    effects of the beetle kill on marten habitat enhancement in a Supplemental EA.

4         In addition, the SIR compounds the EA's failure to properly address the most recent

5    science regarding the impacts of the type of logging authorized by this Project on the marten, the

6    Moriarty Study. As Earth Island noted in its initial Supplemental Memo, ECF No. 75 at 15, the

7    Service's SIR violates NEPA by citing Maeton Freel (1991) as its sole marten scientific literature

8    authority. AR 16484; *see also* Buss Decl. Ex. 3, ECF No. 76-3 (full Freel Report). Earth Island

9    has already raised the Service's inadequate consideration of the most recent science relevant to

10   the Project's impacts on marten, the Moriarty study, AR 05554–66, in the Final EA. ECF No. 52

11   at 35–37. Now, in its analysis of the beetle kill, the Service doubles down by not citing that study

12   or any other study conducted within the last three decades. Significantly, the Service's conclusion

13   in the SIR that continuing to implement the project, even without most of the intended marten

14   habitat enhancement, will nevertheless benefit marten, AR 16483–84, is directly at odds with the

15   Moriarty study's recommendation regarding the impacts of this type of logging on marten habitat.

16   *See* AR 05563 ("[T]he most obvious recommendation to benefit martens is to plan fuels

17   treatments outside of their habitat.") The Service's only apparent response to this argument is to

18   misleadingly reference the original EA's solitary and insufficient acknowledgement of the

19   Moriarty study. *See* ECF No. 80 at 5; *see also* ECF No. 53 at 33–35 (explaining how

20   consideration of Moriarty in EA violated NEPA). But this citation to the EA actually proves the

21   Service was aware of the Moriarty study and its relevance before it prepared the SIR and

22   highlights the significance of its total failure to address that most recent science in the SIR.

23        Agencies must take a "hard look" and consider new information that bears on the "human

24   environment in a significant manner or to a significant extent *not already considered*." *Marsh v.*

25   *Oregon Natural Resources Council*, 490 U.S. 360, 373–74 (1989) (internal quotations omitted).

26   Whether new information is significant depends on the degree to which new information could

27   alter or further inform agency decision making. *Id.* at 374 (describing that the significance of new

28   information "turns on the value of the new information to the . . . decision-making process"); ECF

1    No. 75 at 13. Additionally, supplemental NEPA analyses are necessary when a project falls

2    "quantitatively [outside] the spectrum of alternatives that were discussed in the draft [EA]."

3    *Russell Country Sportsmen v. United States Forest Serv.*, 668 F.3d 1037, 1045 (9th Cir. 2011).

4    An Agency's failure to undertake supplemental NEPA analysis in light of significant new

5    information is contrary to law. *Klamath Siskiyou Wildlands Center v. Boody*, 468 F.3d 549, 561–

6    62 (9th Cir. 2009). This is a "low standard." Plaintiffs need not show that significant effects *will*

7    *in fact* occur, but only that new information raises substantial questions regarding whether new

8    significant impacts will occur. *See id.*; *see also* ECF No. 75 at 13. In the Three Creeks EA and

9    DN/FONSI, the Service avoided finding adverse effects to the marten by relying on the fact that

10   martens would not be present outside the marten units and by citing to enhancement measures in

11   the marten units. AR 00038, AR 00040–1, AR 00116–17. The beetle kill's destruction of a large

12   swath of prime marten habitat and the Service's decision to remove two of the three marten units

13   from the project are individually and cumulatively significant new information and represent a

14   course of action that falls "quantitatively [outside] the spectrum of alternatives that were

15   discussed in the draft [EA]." *See Russell Country Sportsmen*, 668 F.3d at 1045; *see also Warm*

16   *Springs Dam Task Force v. Gribble*, 621 F.2d 1017, 1024 (9th Cir. 1980).[3]

17        The new information is outside of the scope of the alternatives discussed in the EA because

18   the EA only discussed two options; one where the Service takes no action and one where the

19   Service conducts commercial thinning with 623 acres of marten habitat enhancement. AR 00015.

20   Because the beetle kill and its adverse impact on 90% of the marten habitat that would have been

21   enhanced within the three marten units constitutes new information that bears on the "human

22   environment in a significant manner or to a significant extent not already considered," the Service

23   acted arbitrarily and capriciously in violation of NEPA by deciding not to conduct supplement

24   ─────────────────────────

25   [3] The Forest Service also observes that "Plaintiffs do not suggest that an alternative to removing the marten units from the Project would improve Pacific marten habitat." ECF No. 80 at 7. This is both correct and misses the point. What Earth Island challenges is not that the specific

26   enhancements will no longer occur and therefore must be supplemented elsewhere, but rather that impacts to the marten, when accounting for that loss of enhancement, is not yet known because

27   analysis has not been done to assess that impact. This trespasses the very core of NEPA's purpose to ensure informed decision-making. 40 C.F.R. § 1500.1(c) (2018).

28

1    NEPA analyses. AR 16477; 5 U.S.C. § 706(2); 40 C.F.R. § 1502.9(c)(1).

2    **II.      The Proposed Inyo Craters Project warrants supplemental NEPA analysis for**
3           **the Three Creeks Project.**

4           The Forest Service attempts to wave away Earth Island's argument regarding the agency's

5    failure to analyze impacts of the reasonably foreseeable Inyo Craters Project by arguing (1) that

6    this is a "newly minted claim" for which they presumably had insufficient notice, and (2) by

7    arguing that "any APA challenge to the proposed Inyo Craters project is not ripe[.]" ECF No. 80

8    at 13. To quickly dispense with the second argument, Earth Island is not here attempting to bring

9    an APA challenge against the proposed Inyo Craters Project and, therefore, will not be addressing

10   the Forest Service's argument rebutting this non-existent challenge.

11          What Earth Island *does* challenge, as discussed below and in Earth Island's Supplemental

12   Memo, ECF No. 75 at 18–24, is the Forest Service's failure to analyze, within the ambit of the

13   Three Creeks Project, whether the new circumstances and information presented by the

14   reasonably foreseeable Inyo Craters Project warranted additional NEPA analysis. This claim, that

15   the Forest Service failed to undertake supplemental NEPA analysis in light of significant new

16   circumstances or information in violation of 40 C.F.R. § 1502.9(c)(1), was sufficiently pled in

17   Earth Island's Amended Complaint. *See* ECF No. 69 at 28–29 (Claim 11). Claim 11 expressly

18   pleads a failure to act claim under the APA, 5 U.S.C. § 706(1), based on the Service's continuing

19   legal obligations under Section 1502.9(c)(1), ECF No. 69, ¶¶ 135, 138, and ties that claim to the

20   new circumstances raised by the bark beetle outbreak. *Id.* ¶¶ 136–137. The introduction of the

21   proposed Inyo Craters Project, which was catalyzed by the bark beetle outbreak, is just another,

22   more recent example of significant new circumstances and information caused by the beetle

23   outbreak that the Forest Service has failed to consider. In fact, a sister project such as the Inyo

24   Craters Project was specifically anticipated by the Forest Service in the SIR when it stated that

25   "the Forest may subsequently propose treatment under a new project *in the near future in these*

26   *same units*[.]" AR 16484 (emphasis added).

27          To the extent that the Forest Service argues it did not have sufficient notice of the factual

28   basis for Earth Island's claim, Earth Island points out that the Forest Service was already aware of

PAGE 7 OF 10. REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
SUMMARY JUDGMENT

1    the details surrounding the proposed Inyo Craters Project, because the Inyo Craters Project was

2    itself proposed by the Forest Service. *See* ECF 76-2 (Inyo Craters scoping letter from Forest

3    Service). In *Friends of the Clearwater v. Dombeck,* 222 F.3d 552, 558–59 (9th Cir. 2000), the

4    Ninth Circuit specifically upheld the ability of a plaintiff who had plead a failure to act claim

5    (failure to prepare an SEIS) to raise new facts not alleged in its complaint to support that claim.

6    As is the case here, those new facts were all readily available and known to the Forest Service

7    (also the defendant in that case) because they were "generated by the Forest Service itself." *Id.* at

8    559*; see Klamath-Siskiyou Wildlands Ctr. v. MacWhorter,* 797 F.3d 645, 653–54 (9th Cir. 2015)

9    (concluding that ESA notice was sufficient where the agency itself possessed the information it

10   claimed to not have sufficient notice of).

11        Because the Service had notice of its own pending Inyo Craters Project, it should have

12   itself undertaken analysis as to the potential impacts combined with the modified Three Creeks

13   Project. This is because under NEPA, agencies have an independent obligation to maintain a

14   "hard look" at project impacts. *See* ECF No. 75 at 18; *Dombeck,* 222 F.3d at 557 ("[A]gency must

15   be alert to new information that may alter the results of its original environmental analysis, and

16   continue to take a hard look at the environmental effects of [its] planned action, even after a

17   proposal has received initial approval."). *See City of Davis v. Coleman*, 521 F.2d 661, 671 (9th

18   Cir. 1975) (explaining that federal agencies' fulfillment of their "vital responsibility" to comply

19   with NEPA "*should not* depend on the vigilance and limited resources of environmental

20   plaintiffs") (emphasis added). None of the pleading cases cited by the Forest Service, *see* ECF

21   No. 80 at 11, involve a failure to act claim based on the ongoing legal obligations imposed by

22   Section 1502.9(c)(1), and are thus easily distinguishable from the facts here.

23        New information that triggers the obligations under Section 1502.9(c)(1) would include

24   new cumulative impacts which are "the impact[s] on the environment which result[] from the

25   incremental impact of the action when added to other past, present, and *reasonably foreseeable*

26   *future actions*[.]" 40 C.F.R. § 1508.7 (2018); ECF No. 75 at 23–24. This means the Service must

27   consider new information surrounding proposed actions. *N. Plains Res. Council, Inc. v. Surface*

28   *Transp. Bd.*, 668 F.3d 1067, 1078–79 (9th Cir. 2011) ("[P]rojects need not be finalized before

they are reasonably foreseeable[,]" "reasonably foreseeable future actions need to be considered

even if they are not specific proposals.").[4] "Because speculation is . . . implicit in NEPA, [ ] we

must reject any attempt by agencies to shirk their responsibilities under NEPA by labeling any

and all discussion of future environmental effects as crystal ball inquiry." *Id*. at 1079. Therefore,

the Service's argument that Earth Island may not challenge the Service's failure to act has no

merit. For the reasons discussed above and in Earth Island's Supplemental Memorandum, ECF

No. 75 at 21–24, the Proposed Inyo Craters Project was "reasonably foreseeable" and therefore

the Service was "on notice" about the project before Earth Island raised the issue in this action.

The Forest Service also appears to argue that even if the project was foreseeable, an

analysis of the cumulative impacts of these combined projects is not necessary at this time. ECF

No. 80 at 12. To support this contention, it cites to a concurrence in *Sierra Nevada Forest Prot.

Campaign v. U.S. Forest Serv.*, 166 F. App'x 923, 928 (9th Cir. 2006), an unpublished case, for

the proposition that the cumulative impacts of the current project (Three Creeks) and the

proposed project (Inyo Craters) should be considered only during the later Inyo Craters NEPA

process. In *Sierra Nevada,* however, the agency had already considered whether reasonably

foreseeable future projects would contribute to cumulative effects by designating a "wildlife

analysis area" within which it "assess[ed] potential effects [of future projects] on… wildlife

species." *Id.* at 926. Here, no such analysis has taken place. More importantly, in a binding

majority opinion, the Ninth Circuit has already clearly stated that agencies may not "defer

consideration of cumulative impacts to a future date when meaningful consideration can be given

now[.]" *N. Plains Resource Council, Inc.*, 668 F.3d at 1078.

The Service's argument that Earth Island is precluded from raising a claim regarding the

agency's failure to act in response to the proposed Inyo Craters Project is flatly inconsistent with

the Service's NEPA Handbook (discussed in ECF No. 75 at 22), with the continuing obligations

imposed by Section 1502.9(c)(1), and with the Ninth Circuit's interpretation of an agency's duty

to consider new information under NEPA. *See, e.g.*, *Dombeck*, 222 F.3d at 558–59; *see also*

---

[4] *N. Plains Res. Council*, upon which Earth Island relied in its Supplemental Memorandum, ECF No. 75 at 20–21**,** and which directly contradicts the Service's position, is notably absent from the Service's Response.

1   Forest Service NEPA Handbook at 1909.15 § 18 (Buss Decl. Ex. 4, ECF No. 76-4 at 46)

2   (requiring the Service to "[b]e alert for new information and changed circumstances"). The

3   Service, not Earth Island, had a duty to consider the new information now, and it has not done so,

4   in violation of the APA, 5 U.S.C. § 706(1), and NEPA, 40 C.F.R. § 1502.9(c)(1) (2018).

5                                             **CONCLUSION**

6          For the reasons set forth above and in Earth Island's reply, amended motion, initial, and

7   supplemental summary judgment briefing and supporting declarations and exhibits, Earth Island

8   respectfully requests that this Court grant its amended motion for summary judgment, ECF No.

9   74, deny the Service's motion[5], and vacate the Three Creeks Project's DN/FONSI, Final EA, and

10  October 2020 SIR because the Project's administrative record shows that the Forest Service acted

11  arbitrarily and capriciously and contrary to NEPA in violation of Section 706(2) of the APA. In

12  addition, the Forest Service violated APA Section 706(1) and this Court should compel the

13  Service to complete public, supplemental NEPA analysis to properly evaluate the new

14  information and the impacts of the reasonably foreseeable Inyo Craters Project.

15

16  Respectfully submitted on this 8th day of October, 2021.

17

18                                                      s/Tom Buchele
                                                        Tom Buchele (CA Bar No.129657)
19                                                      Earthrise Law Center
                                                        Lewis & Clark Law School
20                                                      10101 S Terwilliger Blvd.
                                                        Portland, OR 97219-7799
21                                                      Tel:  503-768-6736
                                                        Fax: 503-768-6642
22

23  [5] To-date the Forest Service has not filed an amended or supplemental motion for summary
    judgment. Thus Federal Defendants' Notice of Motion and Cross Motion for Summary Judgment,
24  ECF Nos. 44 and 44-1 (proposed order), which seeks summary judgment only on, and dismissal
    of, Claims 1–10 in Earth Island's original complaint, is its only summary judgment motion on
25  record. Earth Island's request for denial of Defendants' motion encompasses its prior motion,
    ECF No. 44, as well as any future motion requesting summary judgment against Earth Island's
26  additional two claims (Claims 11 and 12). Earth Island reserves the right to challenge any tardy
    summary judgment motion that the Service might file after Earth Island has filed this, its final
27  brief addressing summary judgment issues. Earth Island also reserves the right to challenge any
    final "reply" filed by the Service in support of a non-existent cross-motion for summary judgment
28  on Claims 11 and 12.

          PAGE 10 OF 10. REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
                             SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Email: tbuchele@lclark.edu

s/Bridgett Buss
Bridgett Buss, *Admitted Pro Hac Vice*
Earthrise Law Center
Lewis & Clark Law School
10101 S Terwilliger Blvd.
Portland, OR 97219-7799
Tel:  503-768-6825
Fax: 503-768-6642
Email: bridgettbuss@lclark.edu

Attorneys for Plaintiffs Center for
Biological Diversity and Earth Island
Institute.